No. 25-1170

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

STATE OF NEW JERSEY, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Massachusetts

---

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

---

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD
DEREK WEISS
  *Attorneys, Appellate Staff
  Civil Division, Room 7325
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 616-5365*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    I.      The States Cannot Assert the Citizenship Rights of Third Parties........................2

    II.     The States Lack Article III Standing. .....................................................................8

    III.    Even if the States Have Standing, the Nationwide Injunction Is Overbroad................................................................................................................9

    IV.    The Remaining Stay Factors Warrant a Stay. ...................................................... 10

CONCLUSION ............................................................................................................. 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## INTRODUCTION

The district court premised a nationwide injunction on purported injuries to eighteen plaintiff States, a political subdivision of one of those States, and the District of Columbia (collectively, the "States"), which claimed that an Executive Order would improperly deny their residents citizenship rights under the Fourteenth Amendment and a related federal statute. That injunction was improper on multiple independent grounds: the States' suit ignores settled limits on *parens patriae* and third-party standing; it rests on attenuated claims of harm that do not give rise to Article III standing; and the injunction is far broader than necessary to give the States relief even if they could overcome those hurdles.

None of the States' responses justifies the district court's sweeping injunction. The States claim exemption from third-party standing principles, stating that they can "litigate claims that federal action violates individual constitutional rights," as long as each "State establishes its own Article III injury." Opp. 16. That is the same argument the Supreme Court rejected in *Kowalski v. Tesmer*, 543 U.S. 125, 127, 129 n.2 (2004), and the States provide no justification for ignoring this holding. Moreover, the States fail to explain either how their indirect injuries satisfy Article III or why a more tailored injunction could not remedy their purported harms. The injunction should be stayed in its entirety, or at a minimum, stayed as it applies beyond the States' borders.

**ARGUMENT**

**I.   The States Cannot Assert the Citizenship Rights of Third Parties.**

The States' fundamental claim is that the Executive Order will lead the federal government to deny citizenship to certain individuals. As our motion explained, the States cannot assert the individual-rights claims of their residents, much less of residents of other States that agree with the Order's interpretation of the Fourteenth Amendment. The States have no *parens patriae* standing; they cannot circumvent basic third-party standing principles; and in any event they assert only attenuated injuries. None of the States' efforts to paper over these deficiencies persuades.

**A.**  The States first unsuccessfully attempt (at 6, 13) to recharacterize their claims as an attempt to assert their own rights rather than others' individual rights. They allege that "State laws and constitutions frequently include U.S. citizenship as an eligibility requirement for civic activities like serving as a juror, voting in state elections, and serving as governor." Opp. 6 (citations omitted).

Of course, assertions that an individual has a right to serve on a jury, vote, or perform other "civic activities" are fundamentally individual-rights claims not meaningfully different from the claim that such individuals are citizens, underscoring that third-party standing principles foreclose the States from raising these claims. *See infra* pp. 4-8. But more generally, whether a State could assert a claim about the Executive Order's effects on the States' ability to treat individuals as citizens for these

state-law purposes, the States have not done so here. They have not sought an injunction allowing the States to treat covered individuals as citizens for state-law purposes—for example, allowing them to serve on juries, vote, and run for governor. Instead, they have brought a claim alleging harms from having fewer people the federal government recognizes as citizens for federal-law purposes. The only claims that could justify the injunction are absent individuals' claims that the States have improperly asserted.

　　The preliminary-injunction posture makes the mismatch stark. The Executive Order applies only prospectively, meaning that it will be at least 18 years before anyone covered by the Order is even eligible to serve as a juror or perform comparable "civic activities." Any harm to the States' purported sovereign interests would not occur for decades—long after final judgment in this case. *Cf. Gill v. Whitford*, 585 U.S. 48, 66 (2018) ("'[A] plaintiff's remedy must be 'limited to the inadequacy that produced his injury.'" (alteration adopted)).

　　More generally, under the States' theory a State would automatically have standing to assert *any* individual's naturalization-related claims on the basis that such policies would affect rights under state law as well. The States cite no authority supporting their sweeping theory. And it cannot be squared with other standing principles, which generally recognize that self-inflicted injuries are not sufficient for standing—including injuries inflicted from the interaction between state law and

federal or other state laws. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) ("No State can be heard to complain about damage inflicted by its own hand."); *Colorado v. U.S. EPA*, 989 F.3d 874, 888 (10th Cir. 2021) (holding that a state's "self-inflicted" injury "resulting from" its "legislative decision" was "not legally cognizable" in suit against federal agency). The States are free to amend their laws to the extent they incorporate federal law but may not manufacture standing simply by tying state law to federal law.

    **B.** When the States finally reach core principles of justiciability, they respond mostly by wishing them away. The States attempt to recharacterize the decisions in which the Supreme Court has repeatedly rejected suits by States seeking to litigate the individual-rights claims of residents as establishing merely that States need to "allege … injuries that they suffer[] from the federal action." Opp. 14. They claim the federal government did "not cite a single case in which a State that had established an Article III injury traceable to a federal action and redressable by an order enjoining that action was nevertheless barred from seeking relief." Opp. 15. That gets third-party standing limitations backwards. The States have not identified a case where the Supreme Court has allowed a state to litigate the individual-rights claims of its residents, and the Court has in fact consistently rejected States' attempts to do so. *See, e.g.*, *South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966); *Haaland v. Brackeen*, 599 U.S. 255, 294-95 & n.11 (2023); *Murthy v. Missouri*, 603 U.S. 43, 76 (2024). And that is

4

consistent with the Court's third-party standing precedents generally, which preclude litigating others' claims *even when* the putative plaintiff "has alleged injury sufficient to meet" Article III requirements. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Kowalski*, 543 U.S. at 127, 129 n.2.

The States dismiss the third-party standing doctrine as "prudential." Opp. 15. But a prudential limitation is no less a limitation on justiciability. The States also intimate that third-party standing limitations no longer exist after *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014), but *Lexmark* expressly distinguished third-party standing from the types of prudential standing it was criticizing, *id.* at 127 n.3, and this Court has explained that post-*Lexmark* "the Court's cases discussing the prudential limits on third-party suits remain good law," *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 34 n.20 (1st Cir. 2019).

The States's reliance (at 16) on *Massachusetts v. HHS*, 923 F.3d 209 (1st Cir. 2019), and *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), is likewise misplaced. In *Massachusetts*, this Court addressed only the "narrow" "issue" of "Article III standing," 923 F.3d at 213, not third-party standing limitations. And *California v. Azar* involved a preliminary injunction issued on a "procedural [Administrative Procedure Act] claim," which required the plaintiff States there to establish their own procedural right under that statute. 911 F.3d at 570; *see id.* at 568. Whether the plaintiff States also asserted an Equal Protection claim and an Establishment Clause claim that the district court

5

did not reach, *id.* at 568, was not relevant to whether the court of appeals affirmed the preliminary injunction.

**C.** The States finally seek to escape their third-party standing problem by seeking shelter in two inapplicable exceptions to third-party standing and inventing an additional exception that conflicts with the precedent they rely upon.

First, the States invoke (at 18-19) cases allowing third-party claims when the "challenged restriction" can be "enforce[d] … *against the litigant.*" Opp. 18 (quoting *Kowalski*, 543 U.S. at 130). This exception applies to parties facing sanctions, criminal convictions, or civil penalties. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 193 (1976). But the only "enforcement" the States purport to identify is the Executive Order's instruction that *federal* agencies should not accept documents issued by States as proof of U.S. citizenship. Opp. 18-19. Declining to accept documents is in no sense "enforcement" against the States, which face no penalties or other sanction for issuing such documents. This recognized exception is also why the States' invocation (at 16-17) of cases involving defendants in enforcement proceedings—*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) (defendant in district court), and *INS v. Chadha*, 462 U.S. 919 (1983) (defendant in administrative removal proceeding)—are inapposite.

Second, the States suggest (at 19 n.3) that they fall within the exception to third-party standing for when the litigant "has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to

6

protect his own interests." *Kowalski*, 543 U.S. at 130. The States' claim fails both prongs. Running a state Medicaid program that pays doctors to provide care to patients does not make the States sufficiently "close" to the individuals who possess the rights. And there is clearly no hindrance here. An expectant mother has asserted her child's claim in the related case the district court decided in conjunction with this case. *See* Add. 7-8. In another lawsuit, pregnant mothers have filed suits on behalf of their children and sought class certification for similarly affected individuals. *See Washington v. Trump*, No. C25-0127-JCC, 2025 WL 415165, at *6 n.9 (W.D. Wash. Feb. 6, 2025). There is no substantial barrier to other similar suits.

      The States finally attempt (at 17) to invert third-party standing doctrine, treating *Kowalski* as applying only when a litigant asserting a third party's rights lacks "the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski*, 543 U.S. at 129. Thus, on the States' view, any sufficiently motivated litigant can assert a third party's rights. But that conflicts with *Kowalski* itself, where no one questioned the zeal with which the criminal defense attorneys in that case sought to represent the interests of putative future clients, and would render the third-party standing doctrine largely irrelevant. Nor does this view find support in *Kozera v. Spirito*, 723 F.2d 1003 (1st Cir. 1983). That case held only that a State could bring a third-party complaint impleading a federal defendant when the State was sued over compliance with a federal

7

requirement. *See id.* at 1006. *Kozera* did not state or imply that States are exempt from third-party standing principles.[1]

## II. The States Lack Article III Standing.

In any event, the States also lack Article III standing. The States defend (at 11-13) the district court's erroneous conclusion that the States' downstream injuries are not too attenuated for Article III standing. The States make little effort to identify a limiting principle for their theory of downstream economic harm, which courts of appeals have routinely recognized would confer standing on States to sue over virtually every federal policy. *See, e.g., Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022). Indeed, they barely dispute that their theory would allow States to sue over virtually any change to federal policies that would likely affect the eligibility of aliens for benefits. *See* Mot. 15. They primarily dismiss this as a "policy concern." Opp. 12.

Like the district court, the States emphasize (at 11-12) the decision in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). There, a state-controlled corporation received ongoing fees from a contract with the Department of Education servicing student loans that the federal government sought to cancel, and the Court held that the loss of those fees was a concrete injury to the corporation (and thus the State that controlled

---

[1] Contrary to the States' suggestion (at 10-11), the Fourth Circuit did not address the third-party standing and Article III problems present in this case in *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902 (4th Cir. Feb. 28, 2025). That case involved different associational standing issues. *See id.* at *1.

8

it). *Id.* at 2366. The only dispute in *Nebraska* was whether the state-controlled corporation was effectively part of the State or whether it was a separate entity whose injuries were thus not injuries to the State. *Id.* at 2366-68.

Here, by contrast, the concern is not that the asserted financial injuries are insufficiently concrete; it is that any such injuries to the States are too attenuated—that is, too far "removed from [their] distant (even if predictable) ripple effects" to establish standing. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024); *see United States v. Texas*, 599 U.S. 670, 680 n.3 (2023) ("[W]hen a State asserts … that a federal law has produced only … indirect effects, the State's claim for standing can become more attenuated."). The Executive Order explains that certain individuals do not qualify for citizenship, and only indirectly affects the States.

### III. Even if the States Have Standing, the Nationwide Injunction Is Overbroad.

In attempting to defend the universal sweep of the district court's injunction, the States repeat (at 20) their speculative assertions about people moving between States. As we have shown (Mot. 17-18), however, a narrower injunction tailored to the States' harms if those individuals do move between States would be sufficient to remedy their alleged injuries—a point the States barely contest. That alone is sufficient basis to narrow the sweep of the injunction.

The States, instead, argue that the government did not raise a narrower injunction in the district court. Opp. 21 (citing PA234, PA318, PA372-74). But even

9

setting aside the States' apparent view that a district court could simply ignore Article III and equitable principles governing relief if not expressly raised, the government's opposition to the preliminary injunction clearly requested the court "limit any relief to any party before it that is able to establish an entitlement to injunctive relief," PA235, and the government's district court stay motion argued the States' "claimed injuries would be substantially remedied by an order that provided relief only within their borders." PA373. Treating individuals covered by the Executive Order as citizens when they are within the plaintiff States' borders, regardless of where they are born, would fully remedy the States' alleged injuries.

### IV.   The Remaining Stay Factors Warrant a Stay.

The remaining stay factors likewise favor a partial stay. The States' claims to irreparable harm simply repeat their erroneous claims to standing. And they still offer nothing demonstrating that the harms they face are actually irreparable: it is plaintiffs' burden to show irreparable harm, and they must demonstrate that the reimbursement and administrative procedures available under Medicaid and other programs are inadequate to redress their monetary losses. Nor do the States meaningfully grapple with the preliminary injunction posture of this case: they must show that irreparable harm will occur during the pendency of this case, not years in the future.

More generally, the States disregard the harms created by the district court's overbroad injunction. Granting vastly overbroad relief—including relief that

precludes even internal Executive Branch preparatory operations that cannot impose any harm on plaintiffs—interferes with the operations of a coequal branch of government in a manner that goes far beyond protecting plaintiffs from executive action a court believes may be unlawful.  Such harms surely weigh in the equitable calculus.  *See INS v. Legalization Assistance Project of the L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

## CONCLUSION

For the foregoing reasons, this Court should stay the district court's nationwide preliminary injunction.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
BRAD HINSHELWOOD

*s/ Derek Weiss*
DEREK WEISS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7325*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*
  *derek.l.weiss@usdoj.gov*

March 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rules of Appellate Procedure 27(d)(2)(E) and 32(a)(5)-(6) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,595 words, according to the count of Microsoft Word.

*s/ Derek Weiss*
Derek Weiss

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I also hereby certify that the participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

*s/ Derek Weiss*
Derek Weiss